**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **QBE INSURANCE CORPORATION, *et al.*,**<br><br>Plaintiffs,<br><br>v.<br><br>**CTC TRANSPORTATION INSURANCE SERVICES OF MISSOURI, LLC, *et al.*,**<br><br>Defendants. | Civil Action No. 25-1069 (ZNQ) (JTQ)<br><br>**OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Stay or Dismiss[1] filed by non-party, the Nevada Commissioner of Insurance in his official capacity as the statutory receiver of Spirit Commercial Auto Risk Retention Group, Inc. (the "Receiver")[2]. ("Motion," ECF No. 88.) Plaintiff QBE Insurance Corporation ("QBE") filed opposition ("Opp'n Br.," ECF No. 89), to which the Receiver replied ("Reply Br.," ECF No. 91).

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will **GRANT** the Receiver's Motion.

[1] Defendants CTC Transportation Insurance Services, LLC ("CTC California"), CTC Transportation Insurance Services of Missouri, LLC ("CTC Missouri"), CTC Transportation Insurance Services of Hawaii, LLC d/b/a CTC Transportation Services of North Carolina ("CTC Hawaii"), and Thomas Mulligan (collectively, "Defendants") join the Motion filed by the Receiver. (ECF No. 90.) Defendants note that they "join, adopt and incorporate herein by reference all of the arguments and authorities contained in the Receiver's Motion." (ECF No. 90 at 2.)
[2] The Receiver asserts that it has entered a limited appearance in this case for the sole purpose of seeking to dismiss or stay the action without waiving his right to challenge the Court's personal jurisdiction. (*See* Motion Moving Brief ("Moving Br.") at 1 n.1 (citing ECF Nos. 59, 60, 61).)

# I. BACKGROUND AND PROCEDURAL HISTORY

Spirit Commercial Auto Risk Retention Group ("Spirit") was founded in February 2012 as a commercial auto liability insurance company specializing in commercial trucking coverage. (ECF No. 48 ("Am. Compl.") ¶ 38.) From its inception, Spirit operated within a multi-entity insurance holding company system controlled by Defendants CTC Transportation Insurance Services, LLC, CTC Transportation Insurance Services of Missouri, LLC ("CTC Missouri"), CTC Transportation Insurance Services of Hawaii LLC ("CTC Hawaii"), CTC Transportation Services of North Carolina ("CTC North Carolina"), and Tomas Mulligan ("Mulligan"). (*Id.*) Spirit lacked the independent capacity to operate, lacking any employees of its own. (*Id.* ¶ 39.) Instead, Spirit operated through CTC California and later CTC Missouri. (*Id.*) While these entities received a percentage of collected premiums as compensation, the relationship went beyond that of a typical managing general agent arrangement between arm's-length parties. (*Id.*) Mulligan not only owned CTC California, CTC Missouri, and CTC Hawaii, but he also capitalized and controlled Spirit and Spirit's owner, Spirit Commercial Auto Association. (*Id.*) The integration of Spirit into Mulligan's enterprise extended into claims handling, which was managed by Criterion Claim Solutions, Inc. ("Criterion")—another Mulligan-controlled entity.[3] (*Id.* ¶ 41.)

For several years, CTC California, CTC Missouri, and CTC Hawaii (collectively, the "CTC Entities") acted as Spirit's program administrators and managing general agents. (*See* Moving Br. at 3–4 (citing Declaration of Mark F. Bennett ("Bennett Decl."), Ex. C at ¶¶ 2, 13–16; Ex. J at CTC02225448).) Throughout 2012 to 2019, the CTC Entities mismanaged Spirit's trucking insurance program. (*Id.* at 4.) As a result, Spirit lacked sufficient funds to pay claims or fulfill

[3] Criterion and Mulligan were plaintiffs in separate coverage litigation in this district regarding coverage for the *Spirit* Asset Recovery Action under liability policies issued to Criterion. *See Criterion Claim Solutions, Inc. and Thomas Mulligan v. Scottsdale Indem. Co., et al.*, Civ. No. 20-6225 (D.N.J.) and Civ. No. 21-1617 (3d Cir.).

financial responsibilities to member insureds and third parties who sustained serious injuries in commercial trucking accidents with Spirit's insureds. (*Id.*)

In light of Spirit's dire financial condition, the state of Nevada appointed the Nevada Commissioner of Insurance as Spirit's Receiver on February 27, 2019. (*See* Am. Compl. ¶ 55; Bennett Decl., Ex. A ("Receivership Order").) The Receivership Order vests the Nevada Receivership Court with "exclusive jurisdiction" over Receivership property and enjoins "all persons or entities of any nature . . . [from] commencing, bringing, maintaining or further prosecuting any action at law, suit in equity, arbitration or special or other proceeding against [Spirit], its estate, or the Receiver." (Receivership Order at ¶¶ 6, 13.) The Receivership Order also grants the Receiver the exclusive power to "collect all debts and monies due and claims belonging to [Spirit]," "initiate and maintain actions at law or equity in this [Nevada] and other jurisdictions," and to "pursue any creditor's remedies available to enforce [his] claims." (*Id.*) At the Receiver's request, Spirit was placed into liquidation on October 24, 2019. (Bennett Decl. at ¶ 6.)

Thereafter, on February 6, 2020, the Receiver filed suit against the CTC Entities and their officers and/or directors, Mulligan, Daniel George, Brenda Guffey, Matthew Simon, and Scott McCrae (the "Individual Insureds") in Nevada state court. *See* Case No. A-20-809963-C, *Barbara D. Richardson in Her Capacity as the Statutory Receiver for Spirit Commercial Auto Risk Retention Group, Inc. v. CTC California, et al.* (the "Nevada Action"). Ultimately, the claims against the CTC Entities were referred to arbitration (the "Arbitration"). (Moving Br. at 5.) Following a two-day arbitration hearing in February 2025, the Receiver obtained an award holding CTC California and CTC Missouri jointly and severally liable to Spirit for $82,909,671.00.

(Bennett Decl., Ex. C ("Arbitration Award") at ¶ 27.) The arbitrations dismissed the Receiver's claims against CTC Hawaii without prejudice. (*Id.* at 2.)

On June 2, 2025, the Nevada state court affirmed the Arbitration Award and entered a judgment for $87,689,263.00, which includes an additional $5 million in pre-and post-judgment interest (the "$87 Million Judgment"). (Bennett Decl., Ex. D at 14.) The claims against the Individual Insureds are still being litigated in the Nevada Action. (Moving Br. at 5.)

The CTC Entities are insured under identical errors and omissions malpractice insurance policies issued by the Insurers (the "CTC Malpractice Policies"). (Am. Compl. ¶¶ 16–35.) The CTC Malpractice Policies provide each CTC insured with $25 million in insurance and provide broad coverage for exactly the type of professional negligence claims that formed the basis of the Receiver's Judgment against the CTC Entities. (*See* ECF No. 48-1.) Additionally, each of the CTC Malpractice Policies also covers as an "insured" "any past or current principal, partner, officer, director, trustee, shareholder or employee of the Named Insured." (*Id.* at § XII.G.)

On February 6, 2025, the Insurers filed a preemptive strike declaratory judgment action in the District of New Jersey (the "New Jersey Action") that failed to name the Receiver as a party to the litigation. (*See generally* ECF No. 1.)

On August 18, 2025, the Receiver filed a declaratory judgment action in the Southern District of California. *See Ned Ganes v. QBE Ins. Co., et al.*, Case No. 3:25-cv-02119 (the "California Action"). The Receiver selected the Southern District of California because California is the state where CTC California was formed and where the CTC Entities primarily operated from. (*See* Moving Br. at 8.)

On August 19 and 21, 2025, the Receiver filed involuntary bankruptcy petitions against CTC California and CTC Missouri in the Bankruptcy Court for the Southern District of California.

*See In re CTC Transportation Insurance Services, LLC*, Case No. 25-03422-JBM7 (CTC California); *In re CTC Transportation Insurance Services of Missouri, LLC*, Case No. 25-03469-JBM7 (CTC Missouri). On October 3, 2025, a receiver representing County Hall Insurance filed a petition to place CTC Hawaii into involuntary bankruptcy in the same District. *See In re CTC Transportation Insurance Services of Hawaii, LLC*, Case No. 25-04138-JBM7. The three bankruptcies have been consolidated for joint administration under Lead Case No: 25-03422. (*See* Bennett Decl. at Ex. 1.)

On October 22, 2025, the District Court for the Southern District of California entered an Order referring the Receiver's California Action to the Bankruptcy Court. (Bennett Decl. ¶ 14.) The District Court found that referral was required under 28 U.S.C. § 157(a) because the insurance coverage issues raised in the California Action are "related to" the pending CTC bankruptcies. (Bennett Decl., Ex. H.) Thus, all three bankruptcies and the Receiver's related coverage action are all pending in the Bankruptcy Court for the Southern District of California. (Moving Br. at 10.)

On October 21, 2025, the CTC Entities and Mulligan filed a letter with this Court agreeing to litigate the coverage issues in California. (ECF No. 81.) The CTC Entities and Mulligan specifically state that the New Jersey "action should be stayed and/or dismissed in light of the bankruptcy proceedings in California" and that because "the coverage issues Plaintiffs seek to litigate here are the exact same issues that will be addressed in the California bankruptcy proceedings," the "interests of justice [and] judicial economy" are best served by having all issues resolved in the Receiver's adversary action in California. (*Id.*)

## II. LEGAL STANDARD

### A. AUTOMATIC STAY

Section 362(a) of the Bankruptcy Code operates as an automatic stay at the:

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . .

11 U.S.C. § 362(a)(1).

"The scope of the automatic stay is broad." *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1203 (3d Cir. 1991). "All proceedings are stayed, including . . . judicial proceedings. Proceeding in this sense encompasses civil actions." *Assoc. of St. Croix Condo. Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982). A § 362 stay is automatic once a bankruptcy petition is filed regardless "of whether the parties to the proceedings stayed are aware that a petition has been filed." *Maritime Elec.*, 959 F.2d at 1204. Only the bankruptcy court can lift the stay. *Id.*

### B. FORUM NON CONVENIENS

A *forum non conveniens* dismissal "is a determination that the merits [of a case] should be adjudicated elsewhere." *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 432 (2007). Dismissal under this doctrine is appropriate "when considerations of convenience, fairness, and judicial economy so warrant." *Id.* In the absence of a forum selection clause, the Third Circuit uses four factors to guide a court's analysis of whether a *forum non conveniens* dismissal is warranted:

> (1) the amount of deference to be afforded to plaintiffs' choice of forum; (2) the availability of an adequate alternative forum where defendants are amenable to process and plaintiffs' claims are cognizable; (3) relevant 'private interest' factors affecting the

> convenience of the litigants; and (4) relevant 'public interest' factors affecting the convenience of the forum.

*Collins v. Mary Kay, Inc.*, 874 F.3d 176, 186 (3d Cir. 2017).

## III. DISCUSSION

### A. AUTOMATIC STAY

The Receiver argues that the automatic stay provided by Section 362(a) of the Bankruptcy Code precludes the Insurers from continuing to litigate their coverage claims against the three debtor entities, CTC California, CTC Missouri, and CTC Hawaii. (Moving Br. at 12–13.) The Receiver notes that the Insurers have conceded that this Court can take no action to adjudicate the insurance rights related to the CTC Entities because of the bankruptcy proceedings in California. (*See* Moving Br. at 12.) However, the Insurers argue that the Court can proceed against Mulligan, individually, on the same coverage issues and under the same shared insurance policies at issue in the bankruptcy proceedings while the rest of the claims are stayed against the named insureds. (*See* Opp'n Br. at 28–32.)

"Although the scope of the automatic stay is broad, the clear language of section 362(a) stays actions only against a 'debtor.'" *McCartney v. Integra Nat. Bank N.*, 106 F.3d 506, 509 (3d Cir. 1997) (citing *Assoc. of St. Croix Condominium Owners v. St. Croix Hotel Corp.,* 682 F.2d 446, 448 (3d Cir.1982)). As a consequence, "'[i]t is universally acknowledged that an automatic stay of proceedings accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the . . . debtor.'" *Id.* at 509–10 (quoting *Lynch v. Johns–Manville Sales Corp.,* 710 F.2d 1194, 1196–97 (6th Cir. 1983)); *see also United States v. Dos Cabezas Corp.,* 995 F.2d 1486, 1491–93 (9th Cir.1993) (holding that stay does not preclude government from pursuing deficiency judgment against nondebtor cosignors of promissory note); *Croyden Associates v. Alleco, Inc.,* 969 F.2d 675,

677 (8th Cir.1992) (refusing to extend stay to claims against solvent codefendants), *cert. denied sub nom, Harry and Jeanette Weinberg Foundation, Inc. v. Croyden Associates,* 507 U.S. 908 (1993); *Credit Alliance Corp. v. Williams,* 851 F.2d 119, 121–22 (4th Cir.1988) (enforcing a default judgment entered against a nondebtor guarantor of a note during the pendency of the corporate obligor's bankruptcy). A primary rationale for refusing to extend the automatic stay to nonbankrupt third parties is to ensure that creditors obtain "the protection they sought and received when they required a third party to guaranty the debt." *Credit Alliance,* 851 F.2d at 121; *accord In re F.T.L., Inc.,* 152 B.R. 61, 63 (Bankr. E.D. Va. 1993).

However, this prohibition "has been liberalized in a number of cases where courts have applied the automatic stay protection to nondebtor third parties." *McCartney*, 106 F.3d at 510. "Unusual circumstances" present where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party [debtor] will in effect be a judgment or finding against the debtor." *Id.* (citing *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.), *cert denied*, 479 U.S. 876 (1986) (internal quotations omitted).

The Receiver argues that the Insurers are seeking to litigate the same coverage issues with Mulligan here in New Jersey so that they can use any favorable judgment obtained to disclaim their obligation to indemnify the CTC Entities in the California bankruptcy proceedings. This creates an action that is really an action against the debtor itself, as they involve the same policies, the same coverage issues, the same underlying claims, and hinge on the same allegations of wrongdoing flowing from the Nevada Action and Arbitration. *See In re LTL Mgmt., LLC*, 638 B.R. 291, 306 (Bankr. D.N.J. 2022) (extending automatic stay to non-debtors because the claims involved the same products, same time periods, same alleged injuries, and same evidence as claims

against debtor). Plus, if this action were to continue against Mulligan, issues related to policy interpretation and assessment of insurer coverage responsibility will be addressed without input from the CTC Entities. *See In re Johns-Manville Corp.*, 26 B.R. 420, 435 (Bankr. S.D.N.Y. 1983). It is thus necessary to ensure that the insureds can "participate in all such actions to minimize adverse rulings and to protect what may be the most important single asset of its estate, to wit, its claims under its insurance policies." *Id.* at 436.

Additionally, this Court cannot ignore Mulligan's close connections with the debtor companies. Because Mulligan is seeking coverage in his insured capacity as an officer and director, the Insurers will likely attempt to use the relationship between Mulligan and the CTC Entities to avoid paying the $87 Million Judgment. They cannot litigate their coverage obligations solely with Mulligan.

Additionally, the Third Circuit incorporates "record taint" as part of its "broad view of the potential impact on the debtor." *In re LTL Mgmt.*, 638 B.R. at 317 (citing *W.R. Grace & Co.*, 115 Fed. App'x at 569 ("courts have never adopted the absence of collateral estoppel as the test for preventing actions from proceeding against third parties when the debtor is protected by the automatic stay.")). As the Receiver points out, the impact of any findings concerning coverage could impair later attempts to secure payment under the same policies in the bankruptcy proceedings. (Moving Br. at 16.)

Furthermore, the stay applies to "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate"—not just actions against the debtor. 11 U.S.C. § 362(a)(3). The Third Circuit has held that a debtor's insurance policy is unquestionably subject to a stay under 11 U.S.C. § 362(a)(3), as it constitutes estate property. *Acands, Inc. v. Travelers Cas. & Sur. Co.*, 435 F.3d 252, 261 (3d Cir. 2006). This

applies in situations like here where the policies' proceeds are shared with a non-debtor like Mulligan. "The Debtor's interest in the Shared Insurance Policies is not divisible or subject to segregation from the interests of [the non-debtor] under the same policies." *In Re Glob. Indus.*, 303 B.R. at 762. The Insurers claim that, because defense costs are paid outside of policy limits, rulings regarding their obligation to defend Mulligan will not impact estate property. However, this argument ignores that their complaint seeks rulings as to their duty to "defend and indemnify" Mulligan. (Am. Compl. at Counts I–IX (requesting that the Court "enter judgment that . . . the Insurers [] have no duty to defend or indemnify the Defendants.").) Similarly, Mulligan's counterclaims seek rulings that the Insurers are obligated to pay for any judgment entered against him and must pay from the proceedings of the shared insurance policies. (*See* ECF No. 52 at Counts I and II.) Thus, because the Insurers' claims against Mulligan involve estate property, they will be stayed pursuant to section 362(a)(3).[4]

[4] The Court acknowledges the Insurers' argument that the Receiver lacks a basis to seek any affirmative relief. (*See* Opp'n Br. at 25–28.) Specifically, the Insurers argue that the Receiver was required to move for intervention first before seeking affirmative relief. (*Id.*) However, this argument ignores that: (1) the Honorable Justin T. Quinn addressed the issue of intervention at a December 1, 2025 status conference (to which no Insurer voiced an objection to the Receiver's anticipated motion), and (2) the bankruptcy stay applies automatically and regardless of whether the debtor or another party makes a "formal request that it be issued or that it apply to a particular proceeding." *Acands, Inc. v. Travelers Cas. & Sur. Co.*, 435 F.3d 252, 259 (3d Cir. 2006).

## IV. CONCLUSION

For the reasons stated above, the Court will **GRANT** the Receiver's Motion.[5] This matter will be **STAYED** until further Order of the Court pursuant to 11 U.S.C. § 362(a). An appropriate Order will follow.

Date: August 31, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

[5] Because the Court will stay this matter, it will not address the parties' arguments as to any potential dismissal of the case on *forum non conveniens* grounds. *See, e.g. Pope v. Manville Forest Prods. Corp.*, 778 F.2d 23 (5th Cir. 1985) (automatic stay barred dismissal against debtor because such action constituted a "judicial act toward the disposition of the case.").